OPINION
{¶ 1} Appellant, Erick Miller ("Miller"), appeals the judgment of the trial court upholding the decision of the Willowick City Council to deny him the five variances he requested to construct a single-family residence. For the reasons indicated herein, we reverse the judgment entry of the trial court and remand this matter to the trial court.
 {¶ 2} When Miller purchased the property at 172 East 317th Street in Willowick, Ohio in 2001, it was a lot with thirty-foot frontage that had a cottage-like structure on it. It and the other houses in the neighborhood were built many years ago as vacation cottages, which were eventually converted into year-round dwellings. Even before he purchased the property, Miller was aware of its inherent limitations in terms of the small lot size. Miller testified that he had "20 conversations" with the local building official relative to rebuilding the structure to suit his intentions. The building official made him aware of the zoning restrictions, but told Miller that he would "work with" Miller to try to accomplish his goal. Soon after purchasing the property, Miller realized that it was not economically feasible to do any substantial construction on the existing structure. He decided it was cheaper to tear down the structure and start anew, and that is what he did. By the time of the Board of Zoning Appeals ("BZA") hearing on March 13, 2002, Miller had razed the structure on the lot.
 {¶ 3} As a result of tearing down the structure, Miller could no longer avail himself of the structure as a nonconforming use. R.C. 713.15 applies to a nonconforming use that has been discontinued:
 {¶ 4} "The lawful use of any dwelling, building, or structure and of any land or premises, as existing and lawful at the time of enacting a zoning ordinance or amendment to the ordinance, may be continued, although such use does not conform with the provisions of such ordinance or amendment, but if any such nonconforming use is voluntarily discontinued for two years or more, * * * any future use of such land shall be in conformity with sections 713.01 to 713.15 of the Revised Code. The legislative authority of a municipal corporation shall provide in any zoning ordinance for the completion, restoration, reconstruction, extension, or substitution of nonconforming uses upon such reasonable terms as are set forth in the zoning ordinance."
 {¶ 5} While the ordinance governing non-conforming uses does not appear in the record, the transcript of the BZA hearing clearly reflects an assumption that Miller could no longer avail himself of the structure as a non-conforming use once he tore it down, and our review will proceed on that assumption.
 {¶ 6} Once the structure was torn down, either Miller had to conform to the current zoning requirements, which would have required him to purchase an adjoining lot in order to conform to a fifty-foot frontage requirement, or he had to design a new structure to fit onto the existing footprint of the old structure. He took the latter course and designed a new structure for himself, which tried to fit onto the old footprint, but went beyond it, and would require variances from the city in order to get a building permit. Based on his prior conversations with the building inspector, he made application for four separate variances, giving as his reason for his request, "to allow for ample living space within home while maintaining original width on house and keeping within the normal width for adjacent homes." The variances requested by Miller dealt with side yard, front setback, rear yard, and minimum distance in front of the garage.
 {¶ 7} At the BZA hearing to consider his requests for variances, the BZA modified his requests to add a fifth variance dealing with minimum lot area requirements.
 {¶ 8} At the BZA hearing, when Miller was asked whether he had considered that the lot might not be a buildable lot, he answered, "[y]es, absolutely." He went on to explain that, based upon his conversations with the building official, the city would work him to allow him to build a suitable home. When asked if there were other options for the lot, Miller responded, "[t]here's all kinds of options," explaining that he could sell the lot to an interested neighbor, or he could try to fit a conforming house onto the lot. Four individuals who own property near the subject lot all testified against the granting of the variances. The BZA also had before it Miller's application for variances as well as his intended plan for new home construction, detailing the specific variances he was requesting. Despite acknowledging that Miller had done a "really nice job" in designing a home to try to fit onto the lot, the BZA recommended denial of Miller's requests for variances and referred the matter to city council for its decision. Six days later, council issued an administrative order denying the variances.
 {¶ 9} Miller then appealed to the Lake County Common Pleas Court, asserting that the denial of his request for variances was arbitrary, capricious, and unreasonable; and that council's decision was not supported by a preponderance of reliable, probative, and substantive evidence.
 {¶ 10} The matter was submitted to the trial court on briefs. The trial court considered only those claims relating to the administrative appeal from the denial of the requested variances. Two other claims, seeking a declaratory judgment and alleging an unconstitutional taking of property, were not considered. In its decision, the trial court referenced the standard of review in an administrative appeal, namely, that the decision of the administrative entity must be supported by a preponderance of reliable, probative, and substantive evidence in the record. The "Court's Analysis and Conclusion" were as follows:
 {¶ 11} "Based on careful review of the transcript of the administrative proceeding as well as review of the parties [sic] briefs, it is the order of this Court that the decision of the Willowick Board of Zoning Appeals denying Plaintiff's request for five (5) zoning variances is hereby affirmed. There is no just cause for delay. IT IS SO ORDERED."
 {¶ 12} In his single assignment of error to this court, Miller asserts that "[t]he trial court erred in affirming Appellee's denial of Appellant's variance requests since Appellee's denial was not supported by a preponderance of substantial, reliable and probative evidence in the record."
 {¶ 13} Initially, we note that R.C. Chapter 2506, which governs administrative appeals, provides at R.C. 2506.04 that:
 {¶ 14} "The [trial] court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. * * *."[1]
 {¶ 15} Thus, the standard of review applied by the trial court is whether there is a preponderance of substantial, reliable, and probative evidence in the record to support the administrative agency's decision.[2] The trial court in this case made clear that it was abiding by this standard of review. However, the trial court's judgment entry contains no affirmative statement that the BZA decision is supported by a preponderance of reliable, probative and substantial evidence.
 {¶ 16} "As an appellate court, our review is limited to a determination of whether we can say, as a matter of law, that the decision of the trial court is not supported by a preponderance of reliable, probative and substantial evidence."[3] Thus, the roles of the trial court and this appellate court are different when it comes to reviewing a denial by the BZA of an application for a variance. "The role of an appellate court is even more limited in scope. * * * While the court of common pleas has the power to weigh the evidence, an appellate court is limited to reviewing the judgment of the common pleas court strictly on questions of law."[4] Ordinarily, "[a] court of appeals must affirm the decision of the common pleas court unless it finds, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of substantial, reliable, and probative evidence."[5]
 {¶ 17} In this case, the trial court did not include in its judgment whether the BZA denial of Miller's variance was supported by a preponderance of substantial, reliable, and probative evidence. By failing to address this crucial finding, this court is unable to perform its function to determine whether, as a matter of law, the trial court's decision is supported by substantial, reliable, and probative evidence. We are precluded from stating, for the first time, that the BZA decision is supported by substantial, reliable, and probative evidence. We return this matter to the trial court to make a finding on this issue.
 {¶ 18} In sum, we find that the trial court failed to find that there was a preponderance of reliable, probative, and substantive evidence to support the BZA's decision, later finalized by city council, to deny Miller's requested variances. For these reasons, we reverse the judgment of the Lake County Common Pleas Court and remand this matter for further proceedings consistent with this opinion.
Ford, P.J., O'Toole, J., concur.
[1] See, also, Akwen, LTD. v. Ravenna Zoning Bd. of Appeals,
11th Dist. No. 2001-P-0029, 2002-Ohio-1475, at ¶ 11-12.
[2] Kisil v. Sandusky (1984), 12 Ohio St.3d 30, 34;Dudukovich v. Housing Authority (1979), 58 Ohio St.2d 202, 207;Meadow Creek Co. v. Brimfield Twp. (June 30, 1994), 11th Dist. No. 93-P-0070, 1994 Ohio App. LEXIS 2944, at *3.
[3] (Citations omitted.) Adelman Real Estate Co. v. Gabanic
(1996), 109 Ohio App.3d 689, 693.
[4] (Citations omitted.) Akwen, LTD. v. Ravenna Bd. of ZoningAppeals, supra, at ¶ 17.
[5] (Citation omitted.) Id.